Mr. Justice Richardson
delivered the opinion of the eourt.
By the act for the abolition of the rights of primogeniture, passed in 1791, brothers and sisters of the half blood are excluded from the estate, of the intestate, who has left also a brother or sister of the whole blood. And brothers
*457 tint! sisters of tbe whole bloody are in like manner excluded, when the intestate leaves a father or mother. By the same act, the issue of a brother or sister of the half blood can take only under the general provision for the “ next of kin,” and not by representation. By the act of 1791 then, the mother of the- intestate Francis Lazvson, would have taken the whole estate, even if the intestate had left a brother or sister of whole blood ; and a brother or sister of the whole bicod, had there been no parent surviving, would have taken the whole in exclusion of brothers and sisters of the half blood. Thus stood the act of 1791, when the. act of 1797, sets forth, “ Whereas it has been adjudged by the courts upon the construction of the aforesaid act, (act of 1791,) that in cases in which persons die intestate, leaving no wife nor children, &c. but. leaving father or mother, although such intestate leave brothers and sisters, &c. that the'father or mother is entitled to receive the whole estate, 8cc. Be it enacted j that, &c. — in all cases in which persons shall die intestate^ leaving neither wife, child or children, &c. — but leaving a father or mother and brothers and sisters, &c. — one or more, that the estate, &c. shall be equally divided amongst the father, or, if he be dead, the mother and such brothers and sisters as may be living at the tin; e of the death of such intestate, &c. — Provided always, that the issue, if any, of any deceased brother or sister, if more than one, shall take among themselves, the same share which their father or mother, if living, would have taken,” &c. (1 Faust 29. 1 Brev. Dig. 425.)
Now what is the evil complained of? Not surely that parents took in exclusion of brothers and sisters of the half blood, for these were postponed not only to parents, but to brothers and sisters of the whole blood, and were ranked only with the issue of such brothers or sisters. Two distinct classes of kindred, i. e. (1) parents, (2) brothers and sisters of the whole blood, stood, not together, but in succession, to exclude brothers and sisters of the half bloody under the act of 1791. It would seem then that the evil complained of was, that parents took in exclusion of bro- *458 tilers and sisters of the whole blood, and it follows that the amendment desired was, that parents should no longer take in exclusion of them. In construing then the act of 1797. which is called an act to amend, &c. we are to limit the construction by the amendment desired, so as to render the remedy introduced adequate to the evil complained of $ but not more than adequate, unless the terms used plainly require a’more comprehensive interpretation. The terms used are “ brothers and sisters.” Brother is defined by Johnson, “ one born of the same father and mother and sister, M one born of the same parents,” “ correlative to brother,” (see Folio Edition of 1819.) Though, doubtless, those terms may, in many instances, have a much more comprehensive signification. The strict import of the words used conspires then with the apparent object which led to the act of 1797, to confine the meaning of brothers and sisters to those of the whole blood. Again, an act to amend, &c. should not be construed to alter the rules laid down in the primary act, except so far ‘as is plainly required. Now the act of 1791, not only gives the whole estate to the brothers and sisters of the whole blood in exclusion of those of the half blood, and to parents in exclusion of both, but confines the right of taking by representation among collateral kindred,- to the issue of brothers and sisters of the whole blood. But if in the act of 1797, “ brothers and sisters” comprehend both those of the whole and jialf blood, then not only would brothers of the whole and half blood and parents be placed upon the same footing, and constitute but one class instead of three, but by the proviso quoted, the issue of the brother of the half blood would be made to take by representation or per stirpes^ equally with the issue of the brother of the whole blood. Such a change of the rules of the act of 1791, should be imperatively ordered before being adopted $ else we might by construction introduce new principles into that act, which is to be regarded as the context of the act of 1797, and with which, the latter should be rendered consistent, wherever it does not expressly amend *459 or alter the former. As in the interpretation of an act to amend another, we are to look back to the former act, as the context, so in all acts of questionable import, we are to regard the principles of the common law, upon which the laws being bottomed, those principles form the context of all our acts, and aid us in the inspection of a difficult point, not only with a light generally diffused through the whole' system of jurisprudence, but, by leading us with authority wherever the written law is deficient or uncertain. Now the act of 1791, lays down its rules expressly for the distribution of real estates, and directs personal property to be distributed in the same way. And by the canons of the common law for the descent of real estate, a brother of the half blood could not take. Wherever then, in the rules for the descent or distribution of real estate, the word brother is used in an uncertain sense, it should by analogy to the meaning of the same word in those canons be construed brother of the whole blood. It should be marked that those canons are even now of force, except as far as they have been altered, or have become inapplicable ; and it'is vain to oppose to such authority the rules of civil law, or the interpretation of the English statutes of distributions. These may afford general intelligence, but we would look to them in vain for a ray of authority. Indeed the former act of distributions which places brothers of the whole and half blood upon the same footing having been expressly altered in this respect, forms an example to deter rather than to lead us ; for the principle, which, after trial, has been laid aside by the legislature, becomes emphatically illegitimate. The brother of the half blood is therefore by no construction to be placed upon a footing with those of the whole blood. It may be said, that in the case before us, there is no contest between the whole and half blood, and no issue of the half blood appear to take per stirpes. But if brothers and sisters can by the act of 1797, in any instance, mean those of the half blood, the signification must be invariably the same in all cases. In a word, the claims of litigants muslin themselves be suited *460 ío the act, and come within its provisions, or they remain without it; for the act has no elastic power to dilate and Contract its letter or meaning for the accommodation of an unfortunate case. The words must have one meaning in all cases. To these arguments drawn from the strict import of the words brothers and sisters, from the plain rules of the act of 1791, from the cause which introduced the amendment of 1797, and from analogy to the canons of descent, it only remains to add the decision of three judg» es of the court of equity against two in the case of Wren and Wife vs. Carnes and others, (4 Equity Rep. 405.) - The motion is refused. .
Justices Bay, Huger, and Gantt, concurred':
Mf” Justice Colcock, dissented: